IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JULIE BUSSEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 09 C 1962 |
| v. | ) | |
| | ) | |
| BOARD OF TRUSTEES OF COMMUNITY COLLEGE DISTRICT NO. 508, d/b/a CITY COLLEGES OF CHICAGO and RICHARD J. DALEY COLLEGE, | ) | JUDGE DAVID H. COAR |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Julie Bussey ("Plaintiff" or "Bussey") brings this action against the Board of Trustees of Community College District No. 508, d/b/a City Colleges of Chicago and Richard J. Daley College ("Defendant" or "City Colleges"), alleging violations of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 *et seq.* (Count I) and the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1132 *et seq.* (Count II). Defendant moves for summary judgment on both claims. For the reasons stated below, Defendant's motion for summary judgment is DENIED with respect to Count I and GRANTED with respect to Count II.

In conjunction with Defendant's motion for summary judgment, the Court also considers Plaintiff's motion to strike portions of Defendant's reply to Plaintiff's response to its statement of facts and deem admitted portions of Plaintiff's Rule 56.1 statement of facts. For the reasons stated below, Plaintiff's motion is DENIED in part and GRANTED in part.

### BACKGROUND

Plaintiff Julie Bussey was employed by the City Colleges of Chicago at Richard J. Daley College from 2001 until her termination in June 2007. (Defendant's Rule 56.1 Statement of

Material Facts ("DSOF") ¶ 3; Plaintiff's Rule 56.1 Statement of Material Facts ("PSOF") ¶ 1.) While employed by City Colleges, Bussey worked as a part-time testing specialist in the Testing Center, which administers placement tests for incoming students. (DSOF ¶¶ 3, 10-11.) She was supervised directly by Alan Badowski ("Badowski"), the director of testing. (DSOF- Ex. 1, Julie Bussey Dep. 14:3, 15:10-12, Mar. 3, 2010.) Badowski is supervised by Dean Gayle Ward ("Ward"), the Dean of Student Services at Richard J. Daley College. (PSOF- Ex. K, Gayle Ward Dep. 25:11-22, Mar. 24, 2010; PSOF- Ex. L, Alan Badowski Dep. 36:9-24, Apr. 23, 2010.) During the course of her employment at City Colleges, Bussey performed well; she never received criticism about either her performance or her attendance. (PSOF ¶¶ 1-2.)

### *Plaintiff's Injury and Absence from Work*

On April 28, 2007, Bussey suffered a severe sprain to her left ankle. (DSOF ¶ 16.) Bussey's injury ultimately left her unable to work for six weeks under her doctor's orders. (PSOF ¶ 7.) In accordance with City Colleges policy, which requires employees who will be absent to notify their immediate supervisors within half-an-hour of their normally scheduled start times, Bussey called her immediate supervisor, Badowski, on April 29, 2007. (PSOF ¶ 3; DSOF ¶ 16.) She informed him of her injury and told him that she was going to see a physician the next day. (DSOF ¶ 16.) When Bussey visited her doctor on April 30, 2007, he instructed her not return to work for 14 days. (PSOF ¶ 7.) That same day, Bussey called Badowski to relay her doctor's orders. (*Id.* ¶ 8.) During her conversation with Badowski, Bussey told Badowski that, even though her doctor instructed her not to work for 14 days, she might be able to return to work in one week. (Bussey Dep. 77:3-15.) She said this because she knew Badowski would struggle without her, and she hoped she would be able to return to work earlier than her doctor had predicted. (*Id.*) Despite Bussey's hope for a quick recovery, she was unable to return to

work the following week. She called Badowski on May 4 and May 6, 2007 to update him on her condition and let him know that she was not yet able to return to work. (PSOF ¶ 8.) Bussey's injury persisted, and on May 13, 2007, just before she was due to return to work, Bussey called Badowski again and told him that she remained injured and unable to work. (*Id.*)

Bussey returned to her doctor on May 15, 2007. (PSOF ¶ 7.) This time, Bussey's doctor ordered her not to stand or walk for 14 days and barred her from working for another 14-day period. (*Id.*) After her doctor's appointment on May 15, 2007, Bussey updated Badowski on her condition and told him that she was prohibited from working for another two weeks. (*Id.* ¶ 8.) Whenever Bussey called Badowski, Badowski assured her that he would inform Dean Gayle Ward, or Ward's secretary Veronica Roberts ("Roberts"), of Bussey's absence. (Bussey Dep. 35:6-13.) On May 16, 2007, Ward e-mailed Human Resources Administrator Elinore Moore ("Moore") that Bussey "injured her ankle" and "would be out for another two weeks." (DSOF ¶ 18; Ex. 5(a).) In his e-mail, Ward also stated that he was "[n]ot sure if any contact has been made with the Human Resources Office or if any documentation will be needed for [Bussey's] return." (*Id.*) On May 16, 2007, Moore attempted to call Bussey using the phone number in the City Colleges database, but Moore did not reach Bussey because the number listed in the database was wrong. (DSOF ¶ 18.) Moore did not inform anyone that she was unable to contact Bussey and made no further attempt to reach her. (DSOF- Ex. M, Elinore Moore Dep. 48:19-21; 52:7-12, Mar. 31, 2010.)

On May 18, 2007, Badowski cautioned Bussey that she might be fired if she did not show up for work on May 22, 2007. (Bussey Dep. 100:23-102:11; Badowski Dep. 64:10-24.) Fearful of losing her job, Bussey went into work on May 22, 2007. (PSOF ¶ 9; PSOF- Ex. F at 40.) While she was at work, Bussey gave Badowski copies of two doctor's notes—one dated April

30, 2007 and one dated May 15, 2007. (PSOF ¶ 10; PSOF- Ex. A.) Both notes diagnose Bussey with an ankle sprain and state that she may not return to work for 14 days. (PSOF- Ex. A.) Badowski testified that, as far as he can remember, he gave Bussey's notes to two other City Colleges employees: (1) either Ward or administrator Nelson Borges, and (2) either Moore or her assistant in Human Resources. (Badowski Dep. 36:15-18; 47:17-48:7.) Bussey worked again on May 29, 2007. (PSOF ¶ 11.) She was never paid for the time that she worked on either May 22, 2007 or May 29, 2007. (*Id.* ¶ 12.)

Bussey returned to the doctor on May 30, 2007 and received a note stating that she could not resume working until June 14, 2007. (PSOF- Ex. A at 179; Ex. F at 41.) Although Bussey never gave that note to anyone at City Colleges, she informed City Colleges that she received a doctor's note restricting her from working for another two weeks. (DSOF ¶ 23; PSOF ¶ 13.) On both May 30 and May 31, 2007, Bussey called Ward and left messages with his secretary, Roberts, stating that she reinjured her ankle and was instructed by her doctor not to work for another two weeks. (PSOF ¶ 13.)

At the direction of Daley College President Sylvia Ramos and Dean Ward, Moore prepared a letter terminating Bussey on June 4, 2007. (DSOF ¶ 24.) The letter stated: "Because you have been absent from your position since Tuesday, May 29, 2007 and have made to attempt to contact you supervisor, Dean Gayle Ward, J.D., . . . you have abandoned your employment." (PSOF- Ex. D.) Under City Colleges rules, "an employee will be considered to have abandoned his/her employment and shall be subject to termination of his/her employment if . . . [t]he employee is absent for three (3) consecutive work days without prior written approval and without speaking directly with his/her supervisor." (DSOF- Ex. 2, Board Rules for Management & Government § 3.22.) Ward, who is also an attorney, was aware of his duty to inform

employees of their FMLA rights when they have conditions that might trigger such rights. (PSOF ¶ 17.) However, when he recommended Bussey's termination, Ward's main concern was staffing the testing department and ensuring that it ran smoothly. (*Id.*)

On June 14, 2007, Bussey contacted her local union representative, Alan Booker ("Booker") to enlist his help in getting her job back. (PSOF ¶ 18; DSOF ¶ 25.) Booker advised Bussey to go to Daley College with all of her medical notes and to "fill out paperwork." (*Id.*) Bussey did not go to Daley College as Booker suggested; instead, she spoke with Moore on the phone the next day, June 15, 2007. (PSOF ¶ 19.) Offering a vague account of this conversation, Bussey testified that Moore spoke with her about filling out forms to help get her job back. (*Id.*) Moore did not explain that the forms she mentioned related to Bussey's FMLA rights. (*Id.* ¶ 20.) During this conversation, Bussey explained that her printer was broken and asked Moore to send her the forms by mail in addition to e-mail. (*Id.*) Following their phone call on June 15, 2007, Moore e-mailed the forms to Bussey but never complied with Bussey's request to mail the forms as well. (*Id.* ¶ 21; DSOF ¶ 27.) Bussey never printed or completed the FMLA forms attached to Moore's e-mail. (*Id.*) Instead, she opted to obtain legal counsel. (*Id.*)

Throughout the six weeks she was absent from work due to her injury, Bussey neither formally requested FMLA leave nor filled out any related paperwork. (DSOF ¶ 28.) No one at City Colleges ever told Bussey what the FMLA was, informed her of her rights under the FMLA, or explained that she had to fill out paperwork to take FMLA leave. (Bussey Dep. 180:7-17.) Additionally, City Colleges never provided Bussey with FMLA forms before Moore's e-mail to Bussey on June 15, 2007. (Bussey Dep. 180:18-24.)

### *Plaintiff's Employment Benefits*

On January 30, 2006, Bussey received a letter notifying her that her position had been classified as part of the Local 1600 Cook County Colleges Part-Time Professionals Union. (DSOF ¶ 13.) The terms and conditions of employment for part-time professional employees are outlined in the 2004-2008 collective bargaining agreement for Local 1600 full- and part-time professional employees, which Bussey received. (*Id.*) Under this agreement, part-time employees become eligible for health insurance after their first 12 months of employment. (DSOF- Ex. 3, Local 1600 CBA at 78.) On November 30, 2006, Bussey became eligible to participate in open-enrollment for health insurance. (DSOF ¶ 14.) According to Xiomara Cortés Metcalfe, Vice Chancellor for Human Resources and Staff Development at City Colleges, information about open-enrollment was provided to every ember of Local 1600, including Bussey. (*Id.*) Metcalfe claims specifically that all benefits-eligible employees received notification of the open-enrollment period (November 30, 2006 to December 13, 2006) through both an e-mail and a letter. (*Id.*) Bussey denies that she received either form of notification. Instead, she testified vaguely that she received an unidentified letter, which stated that she would receive health benefits "later." (Bussey Dep. 48:8-24.) Bussey never enrolled in the City Colleges health plan. (DSOF ¶ 15.)

Under the Board of Trustees of Community College District No. 508 Rules for Management and Government, all part-time employees are enrolled in the State University Retirement System ("SURS"). (DSOF ¶ 5.) On October 9, 2008, Bussey applied for a separation refund with SURS and cashed out her retirement account. (*Id.* ¶ 30.) Bussey admits that she did so even though no one at City Colleges ever advised or encouraged her to withdraw her pension benefits from SURS.

## LEGAL STANDARD

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). If the movant meets this burden, the non-movant must set forth specific facts (a "scintilla of evidence" is insufficient) demonstrating that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 252.

When reviewing a motion for summary judgment, the court must view the facts in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *See Schuster v. Lucent Tech., Inc.*, 327 F.3d 569, 573 (7th Cir. 2003). At summary judgment, the "court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact." *Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008).

## ANALYSIS

### I. Motion to Strike

Before considering Defendant's motion for summary judgment, the Court addresses Plaintiff's motion to strike portions of Defendant's reply to Plaintiff's response to its statement of facts and deem admitted portions of Plaintiff's Rule 56.1 statement of facts. In conjunction

with its reply materials, Defendant submitted replies to Plaintiff's Rule 56.1(b)(3)(B) responses to Defendant's statement of material facts. The Court strikes Defendant's replies, as neither Local Rule 56.1 nor this Court's Standing Order on Motions for Summary Judgment provide for such replies.

Additionally, Plaintiff moves to deem admitted several of Plaintiff's Rule 56.1 statements of fact. In resolving Defendant's motion for summary judgment, the Court considered Plaintiff's arguments and the parties' obligations to comply with Local Rule 56.1. Though mindful of these considerations, the Court need not rule separately on Plaintiff's motion to deem admitted certain facts. Plaintiff's motion is therefore GRANTED in part and DENIED in part.

## II. FMLA Claim

The FMLA entitles any eligible employee with a serious health condition that renders her unable to perform her position to twelve workweeks of leave during each twelve-month period. 29 U.S.C. § 2614(a)(1)(D); *see also Goelzer v. Sheboygan County, Wis.*, 604 F.3d 987, 992 (7th Cir. 2010). Under the FMLA, employers may not "interfere with, restrain, or deny the exercise of or the attempt to exercise" any rights provided by the FMLA. § 2615(a)(1). The FMLA also forbids employers from discriminating or retaliating against employees who exercise FMLA rights. *See* § 2615(a)(2). A plaintiff bringing an FMLA claim for wrongful termination may advance either the interference or discrimination/retaliation theory of recovery. *See Goelzer*, 604 F.3d at 992; *Burnett v. LFW Inc.*, 472 F.3d 471, 477 (7th Cir. 2006). Bussey advances both, and the Court will address each theory of recovery in turn.

### a. FMLA Interference Claim

To prevail on an FMLA interference claim, Bussey must show that:

(1) she was eligible for the FMLA's protections; (2) her employer was covered by the

> FMLA; (3) she was entitled to take leave under the FMLA; (4) she provided sufficient notice of her intent to take leave; and (5) her employer denied her FMLA benefits to which she was entitled.

*Id.* at 993. The first two requirements are readily satisfied, as the parties agree that (1) Bussey was eligible for the FMLA's protections, and (2) Defendant is a qualified employer under the FMLA, and Defendant employs more than 50 employees within a 75-mile radius of Bussey's worksite. (PSOF ¶¶ 5-6.) In support of its motion for summary judgment on Bussey's FMLA claim, Defendant advances two primary arguments: (1) Bussey failed to meet the fourth requirement articulated above because she did not provide Defendant with sufficient notice of her intent to take leave; and (2) Bussey's failure to complete FMLA paperwork forecloses her claim of interference. Curiously, in its four-page reply brief, Defendant changes course and abandons both of its initial arguments. Instead, Defendant argues for the first time that Bussey cannot establish that she had a "serious health condition" entitling her to FMLA leave, and as a result, the Court need not consider whether she has satisfied any other requirement for succeeding on her FMLA claim. All three of Defendant's arguments fail.

The Court need not address Defendant's third argument, as any argument raised for the first time in a reply brief is deemed waived. *Baker v. America's Mortgage Servicing, Inc.*, 58 F.3d 321, 325 (7th Cir.1995). In any event, the Court considers whether Bussey had a "serious health condition" as a predicate to evaluating whether she provided Defendant with sufficient notice of this condition. An employee is entitled to FMLA leave if she suffers from a "serious health condition" that renders her unable to perform the functions of her job. 29 U.S.C. § 2612(a)(D). An employee has a "serious health condition" under the FMLA where, as relevant here, she sustains an injury that involves "continuing treatment by a health care provider." 29

U.S.C. § 2611(11)(B). Under the FMLA regulations, a number of scenarios constitute "continuing treatment by a health care provider," including where an employee experiences:

> (a) Incapacity and treatment. A period of incapacity of more than three consecutive, full calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that also involves:
>
>> (1) Treatment two or more times, within 30 days of the first day of incapacity . . . by a healthcare provider . . .

29 CFR § 825.114. There is no doubt that Bussey suffered a "serious health condition" within the meaning of the FMLA. On April 28, 2007, Bussey sustained a severe sprain to her left ankle, which led her doctor to restrict her from working for at least six weeks. Bussey visited her doctor on April 30, May 15, and May 30, 2007, and she left each visit with a doctor's note diagnosing her with an ankle sprain and prohibiting her from working for the 14 days following the visit. Even if the Court could entertain Defendant's argument that Bussey has not raised a genuine issue of material fact regarding her "serious health condition," that argument would clearly fail.

The Court therefore turns to Defendant's contention that Bussey failed to provide sufficient notice of her "serious health condition" and intent to take FMLA leave. The FMLA's notice requirements are "not onerous." *Burnett*, 472 F.3d at 478. In providing notice sufficient to comply with the FMLA, an employee need not mention the FMLA nor invoke any of its provisions. *Id.* In fact, "the employee can be completely ignorant of the benefits conferred by the Act." *Id.* (quoting *Stoops v. One Call Commc'ns.*, 141 F.3d 309, 312 (7th Cir. 1998)) (internal quotation marks omitted). An employee must simply provide "information sufficient to show that he *likely* has an FMLA-qualifying condition." *Burnett*, 472 F.3d at 479; *see also Stevenson v. Hyre Elec. Co.*, 505 F.3d 720, 724-25 (7th Cir. 2007) ("The employee's duty is merely to place the employer on notice of a probable basis for FMLA leave."). Once an

employee has provided this level of notice, the employer becomes obligated "to request such additional information from the employee's doctor or some other reputable source as may be necessary to confirm the employee's entitlement." *Id.* at 725 (quoting *Aubuchon v. Knauf Fiberglass, GmbH*, 359 F.3d 950, 951 (7th Cir. 2004)) (internal quotation marks omitted).

Defendant argues that Bussey's representation that she sprained her ankle did not constitute sufficient notice that she suffered from a "serious health condition." In advancing this argument, Defendant focuses almost entirely on Bussey's conversation with her immediate supervisor, Badowski, after her initial visit to the doctor on April 30, 2007. During this conversation, Bussey told Badowski that, even though her doctor ordered her to refrain from working for two weeks, she might be able to return to work in just one week. According to Defendant, this conversation was insufficient to notify Defendant that Bussey suffered from a "serious health condition." That may be true; however, Defendant inexplicably overlooks Bussey's numerous other communications with Defendant throughout her injury-related absence from work. Bussey spoke with Badowski on the phone on April 29, April 30, May 4, May 6, and May 15, 2007, continually updating him as her condition persisted. After each visit to the doctor, Bussey promptly communicated with City Colleges to convey her doctor's orders prohibiting her from working. On May 18, 2007, Badowski cautioned Bussey that she might be terminated for her absence, causing Bussey to defy her doctor's orders and attend work on May 22, 2007. That day, she brought with her copies of two doctor's notes (one dated April 30, 2007 and one dated May 15, 2007) and gave them to Badowski. Both notes diagnose Bussey with an ankle sprain and state that she may not return to work for the 14 days following her doctor's visit. After Bussey's third visit to the doctor on May 30, 2007, she called Badowski's supervisor, Dean Ward. On both May 30 and May 31, 2007, Bussey left messages with Ward's

secretary stating that she reinjured her ankle and was instructed by her doctor to refrain from working for another two weeks.

Bussey need only show that there is a genuine issue of material fact as to whether she informed Defendant that she *likely* suffered from a FMLA-qualifying condition. *See Burnett*, 472 F.3d at 479. She has done at least as much. During her numerous communications with City Colleges about her ankle sprain, Bussey indicated that she visited her doctor three times between April 30 and May 30, 2007, and on each occasion, her doctor ordered her not to work for the 14 days following her visit. Given the definition of a "serious health condition" under the FMLA, Bussey certainly provided enough information to alert Defendant that she suffered from such a condition. The Court therefore rejects Defendant's argument that Bussey supplied inadequate notice to survive summary judgment on her FMLA claim.

Once Bussey notified Defendant that she likely suffered from a "serious health condition," it became Defendant's responsibility to investigate and confirm Bussey's entitlement to FMLA leave. *See Stevenson*, 505 F.3d at 724-25. The record in this case reveals no genuine attempt by Defendant to meet its obligation. Defendant asserts that "City Colleges tried to discover whether Bussey's absence might be due to a serious health condition" when Human Resources Administrator Moore attempted to call Bussey on May 16, 2007. (Def.'s Mem. in Supp. of Mot. for Summ. J. 6.) Apparently relying upon inaccurate contact information listed in the City Colleges database, Moore was unable to reach Bussey. Aside from Moore's single failed phone call, Defendant made no other effort to determine whether Bussey was entitled to FMLA leave. Rather, Defendant blames Bussey for failing to update her contact information and thereby thwarting its attempt to determine whether she had a "serious health condition." Defendant presses this argument even though Bussey continued to communicate with Badowski

for several weeks after Moore's phone call and ultimately left messages for Dean Ward on May 30 and May 31, 2007. Ward never bothered to return Bussey's phone calls before Bussey was terminated on June 4, 2007 through a letter stating: "Because you have been absent from your position since Tuesday, May 29, 2007 and have made to attempt to contact you supervisor, Dean Gayle Ward, J.D., . . . you have abandoned your employment." (PSOF- Ex. D.)

None of Defendant's arguments persuade the Court that it actually attempted to fulfill its obligations under the FMLA. After faulting Bussey for Moore's unsuccessful attempt to reach her by phone, Defendant next argues that Bussey's failure to complete FMLA paperwork forecloses her claim of interference. This argument is equally disingenuous. Defendant did not provide Bussey with FMLA paperwork until Moore e-mailed FMLA forms to Bussey on June 15, 2007—11 days after her termination. Defendant never provided Bussey with any FMLA paperwork before that date, and despite Moore's e-mail, no one at City Colleges ever explicitly informed Bussey of her rights under the FMLA. Neither this nor Defendant's other arguments come close to defeating Bussey's FMLA claim at summary judgment.

### b. FMLA Retaliation Claim

In addition to her interference theory of recovery, Bussey contends that she can establish her FMLA claim through a retaliation theory of recovery. Without direct evidence that Defendant engaged in intentional discrimination, the Court applies the *McDonnell-Douglas* burden-shifting framework to Bussey's FMLA retaliation claim. *See Horwitz v. Bd. of Educ. of Avoca School Dist. No. 37*, 260 F.3d 602, 616 (7th Cir. 2001). To establish a prima facie case of retaliatory discharge under the FMLA, Bussey must demonstrate that: (1) she engaged in a protected activity; (2) Defendant took an adverse employment action against her; and (3) there is a causal connection between Bussey's protected activity and Defendant's adverse employment

action.  *See id; see also King v. Preferred Technical Group*, 166 F.3d 887, 892 (7th Cir. 1999).

If Bussey establishes a prima facie case, the burden shifts to Defendant to articulate a legitimate, non-discriminatory reason for its adverse employment action.  *See id.*  If Defendant succeeds in doing so, Bussey must demonstrate that the Defendant's proffered reason is merely a pretext for discrimination.  *See id.*

Bussey succeeds in establishing a prima facie case that Defendant retaliated against her for exercising her rights under the FMLA.  There can be no real dispute with respect to the first two requirements for establishing a prima facie case.  Bussey engaged in a protected activity by taking several weeks off from work due to her debilitating ankle sprain,[1] and Defendant took an adverse employment action against Bussey by firing her.  With respect to the third requirement, a causal connection may be established through evidence that Bussey's termination "took place on the heels of" her absence from work.  *King*, 166 F.3d at 893 (quoting *Dey v. Colt Constr. & Dev. Co.*, 28 F.3d 1446, 1458 (7th Cir. 1994)) (internal quotation marks omitted).  Bussey satisfies this standard, as she was discharged *during* her injury-related absence.  Because Defendant fails to respond to any of these arguments (let alone even mention Bussey's retaliation theory of recovery), Bussey's FMLA claim survives summary judgment under both her retaliation and interference theories of recovery.

**III.    ERISA Claim**

Defendant next moves for summary judgment on Bussey's claim that Defendant terminated her in order to deprive her of employee benefits in violation of ERISA § 510, 29 U.S.C. § 1140.  To prevail on this claim, Bussey must demonstrate that: "(1) she is a member of

---

[1] A plaintiff may engage in a protected activity by taking time off from work even if she is not formally on FMLA leave.  *See Burnett*, 472 F.3d at 482 (plaintiff gave employer sufficient notice that he suffered from a serious medical condition, and he then "engaged in protected activity by taking time off upon realizing that he would not be able to perform one of the essential functions of the job . . .").

an ERISA plan, (2) she was qualified for the position, and (3) she was discharged under circumstances that provide some basis for believing that [Defendant] intended to deprive her of benefits." *Kampmier v. Emeritus Corp.*, 472 F.3d 930, 943 (7th Cir. 2007). Further, "an ERISA retaliation plaintiff must demonstrate that the employer had the *specific intent* to violate the statute and to interfere with an employee's ERISA rights." *Lucas v. PyraMax Bank, FSB*, 539 F.3d 661, 668 (7th Cir. 2008) (quoting *Bilow v. Much Shelist Freed Denenberg Ament & Rubenstein, P.C.*, 277 F.3d 882, 892 (7th Cir. 2001)) (internal quotation marks omitted; emphasis in original).

Defendant argues that Bussey's ERISA claim is meritless because (1) she was not enrolled in the City Colleges health plan, and (2) although she was automatically enrolled in the State University Retirement System ("SURS") along with all other part-time employees, she voluntarily applied for a separation refund after her termination. Bussey offers no evidence to overcome Defendant's arguments, and most critically, she cannot raise a genuine issue of material fact as to Defendant's specific intent to interfere with her ERISA rights. *See Lucas*, 277 F.3d at 892. With respect to Bussey's participation in SURS, she concedes that she withdrew her retirement account without any encouragement or involvement from City Colleges. She argues, however, that Defendant's specific intent to violate ERISA is revealed through the circumstances surrounding her termination. According to Bussey, Defendant was aware that she had developed a potentially expensive health problem, and even though she was not enrolled in the City Colleges health care plan, Defendant terminated Bussey because she would soon become eligible for health coverage. Aside from her own vague, unsupported testimony, Bussey offers no evidence to support her contention that she was due to become eligible for health benefits shortly after her termination. To the contrary, she admits that she received a copy of the parties'

collective bargaining agreement, which states that part-time employees become eligible for health insurance after the first 12 months of their employment. Under the terms of this agreement, Bussey became eligible for health insurance on November 30, 2006. Bussey claims that she never received any of Defendant's notifications when she became eligible to enroll in the City Colleges health insurance plan, but rather, she received an unidentified letter stating that she would receive health benefits "later." (Bussey Dep. 48:8-24.) Bussey's elusive testimony is insufficient to establish her future eligibility for benefits, let alone that Defendant fired her to prevent her from receiving these benefits. Accordingly, the Court grants Defendant's motion for summary judgment on Bussey's ERISA claim.

## CONCLUSION

For the reasons stated above, Defendant's motion for summary judgment is DENIED with respect to Plaintiff's FMLA claim (Count I) and GRANTED with respect to Plaintiff's ERISA claim (Count II). Additionally, Plaintiff's motion to strike portions of Defendant's reply to Plaintiff's response to its statement of facts and deem admitted portions of Plaintiff's Rule 56.1 statement of facts is GRANTED in part and DENIED in part.

Enter:
/s/ David H. Coar

_____

David H. Coar
United States District Judge

**Dated:** August 3, 2010